Good morning, Your Honor, and may it please the Court, my name is Carter Phillips. I'd like, if possible, to reserve three minutes for rebuttal. I'd like to begin with where I think the District Court committed the sort of fundamental error in this case, and I suppose there's two components to it. One is, I believe the District Court misinterpreted the Supreme Court's decision in Watson v. Philip Morris, and indeed got it almost 100% wrong, and second, the District Court erred by following the Seventh Circuit's interpretation of Watson in the Boeing case. To my mind, this case is fundamentally different from Watson in ways that should have been, I think, dispositive. But if you go back, I mean, what we know about 1442a1 is that, unlike every other removal statute, this is a statute that's construed liberally in favor of removal, that is designed to protect any Federal interest that is at all implicated in a particular case, and to protect those Federal interests to ensure that they are litigated fully in a Federal court. And what the Supreme Court said in Watson when it was dealing with the FTC's regulatory scheme as it applied to Philip Morris was, what we're not talking about in terms of removal is a simple situation where a party is complying with Federal law and has to bring itself into substantial compliance with the regulatory scheme at issue. And what the Court spent a lot of time focusing on in that context was what it regarded as the fatal flaw in the Philip Morris submission, and that was what it called a flaw of omission, and that is that there is no evidence of any delegation of legal authority from the Commission to the Industry Association to undertake the testing on the government's behalf. What we have in our case is exactly, to my mind, 180 percent, the degrees of the opposite. Specifically, what is the delegation that you rely on in this case? So the initial delegation is 49 U.S.C. section 44702D, which is the general provision that authorizes the Federal Aviation Administration to delegate two private representatives to perform a variety of tasks involving inspecting, testing, and issuing certificates. The regulations that implement that are at 14 CFR part 183, and there there are 67 sections that not only provide the FAA with the authority or to implement the statutory authority that it has, but also provides all of the conditions that need to be satisfied in order to retain that kind of an authorization. You then have the ODA order. That's the order that provides for organizational designation authorization, which is what the Airbus helicopter has in this particular case. That is itself a 279-page document with exquisite detail as to the delegation of what it is exactly that my client and all similarly ODA holders are supposed to do. And then finally, you have the memorandum of understanding, specifically between my client and the Federal Aviation Administration. Again, dealing specifically with testing, inspecting, granting certifications, effectively being the deputized agent, the representative of the Federal Aviation Administration. Counsel, did your client certify fitness for any helicopters other than its own? Well, it's not permitted to certify them other than. So the answer to that question is? Well, it depends on what its own is. Obviously, some of these helicopters are in fact, the certificate is held by the foreign corporation. Let me ask you this question then. For which helicopters did your client use the certification? Our client's certification was limited to the Airbus helicopter. That was used in this, that issue in this case? Absolutely. No other helicopters were certified under the auspices of the delegation. Right. And that's very clear because the. . . I just wanted to make sure that the record. . . Right. And the reason for that is because the FAA obviously is going to ask for the organization that's being designated to be one that understands thoroughly every aspect of the item that's being certified. And so we don't know nearly as much about other. . . I don't know Boeing. My clients don't know Boeing's system. So you wouldn't ask my client to be the ones that certify. Now, you might find others who could certify Boeing under certain circumstances. But in this case, yes, our certification authority was limited to the Airbus helicopters. Just to be sure I understand, there were presumably other helicopters that were manufactured by Airbus. Yes. We're not concerned about those other than they would have, the FAA would have delegated the certification process to the company with respect to those as well. Yes, Your Honor. That's absolutely correct. You said it would have? It did, yes. It did. Yes. No, we have broad-ranging authority. And it's a 5-year grant of authority in order to undertake those tasks on behalf of. . . Other Airbus. On behalf of the FAA. Now, to me, the fundamental mistake that the Seventh Circuit made in Boeing is ratcheting up the standard for what it means to act under within the meaning of this statute. Because Judge Easterbrook's opinion somehow identifies a rule-making versus rule-implementing distinction as the basis for whether or not you are, in fact, within removal. And if you put this in the context of what the federal official removal provision is all about, right, which is the situation where customs agents are deputizing private citizens to help them in a law enforcement situation, the idea that those people are exercising some kind of rule-making authority as opposed to simply doing whatever it is they are told to do by a federal government is laughable. So that cannot be the distinction. And, indeed, it seems to me Watson itself tells you what the distinction is. Is there a clear delegation of authority to the private person under those circumstances? And that seems to me undeniably true in this case. The other two requirements, neither of which the district court addressed in this particular case, but I think this, so this court could presumably either send it back, but I think the issue is fully briefed and easy enough for the court to resolve. One is, do the claims in this complaint relate in any way to an act that is undertaken under color of law? And if you read the complaint, the complaint talks all about testing and inspecting and authorizing and certifying. And those are all of the tasks that were specifically delegated to AHI by the Federal Aviation Administration. And then the last issue is, is there a colorable defense? And to my mind, preemption is clearly a colorable defense. Whether it will win or not is not the issue. Is it plausible? I think there's no doubt about it. First of all, we are dealing in a very unusual situation. This is about as comprehensive a regulatory scheme as any I have seen. And I've been inside the Beltway for a long time, so I've seen a fairly large number of these things. And while I am usually doubtful that simply by a comprehensiveness that that by itself will necessarily be adequate to demonstrate field preemption, my guess is you're going to be able to find carve-out segments of this for field preemption. But you don't need to know that now. That's speculation. All you need to know is that there is a colorable argument on that basis. And within that extraordinarily complicated scheme, is there some risk that this litigation is going to impose duties on us, or at least risk imposing duties on us, that are inconsistent with the duties that we need to perform for the federal government? Counsel, let me ask you this. If you're successful in your removal efforts, would your client be inclined to assert the government's sovereign immunity defenses in federal court? I don't know that we would have. I mean, no, I don't think so. I mean, at this point, the defenses that we have in mind, I mean, we're not a government contractor in that sense. We don't build these pursuant to federal requirements. We build them for private purposes for the most part. So at least in this particular case, I don't believe we would do that. Our defense here, our colorable federal defense here, would arise strictly out of the preemption argument. The last point I was going to make is the idea that any of the obligations that could be imposed as a matter of the state law through this litigation, that it couldn't interfere with the full objectives of the federal scheme, is a very serious issue. And one, again, it seems to me you can't evaluate that at this point. All we know is they have asked you to take a hard look at a party who has been essentially deputized by the federal government, to act on behalf of the federal government, and to then make some kind of a judgment as to whether or not. I'm a little confused as to why, what the relevance of your authorization or approval of the, has to do, what you did under federal law has to do with the issues that are going to get litigated in the case. Well, the only thing that it, in terms of the authorization, it doesn't have anything to do with that. Right. I mean, we've been clearly delegated this authority and we acted pursuant to that. The question is, is there a, is there a colorable federal defense that we will be asserting as part of that litigation? And the answer is clearly yes. We have, we have preemption as our colorable defense. And that, and that defense relates directly to the allegations that have been made by the plaintiffs in this particular case. Okay. So it's cabin to preemption. Exactly. That's exactly right, Your Honor. Those are the three points I wanted to make. Oh, I do want to say, I guess, one other point, because I think it's important, there are two points that I'd like to add. One is, I would ask the Court, we obviously appreciate the fact that you granted the motion to allow the general aviation manufacturer's brief to be filed. I think that's an extraordinarily helpful document in understanding the regulatory scheme and in explaining the difference between what a regulated entity does when it demonstrates compliance as opposed to what it does when it determines compliance, which is what you do under the FAA's scheme in this particular case. And then the second point I would just make in passing is that it is striking to me, at least as someone who used to be in the Solicitor General's office, to read the brief of the Solicitor General and the submission that it made in the Watson case, and how the United States Government specifically identified this very program as the, as essentially the archetype of one that is, that, that justifies Federal removal. And that was in response to a concern that this statute would be much too narrowly construed and to be too limited in its ability to allow Federal interests to be protected by Federal courts. If there are no other questions, Your Honors, I reserve the balance of my time. All right. Thank you, counsel.  Good morning, Your Honors. Good morning. Gary Robb appearing for plaintiffs, appellees. During my time I'm going to be addressing the acting under requirement of the statute and, Your Honors, counsel for the defendants' appellees. In their time we'll be addressing the other two essential elements of the statute. All right. May it please the Court. Plaintiffs and Airbus helicopters actually agree on one thing. And that is that this is a helicopter design defect case arising under state products liability law. And that's important. That goes to your question, Judge Schroeder, because in order to show that this product manufacturer was acting under the FAA, it must demonstrate that the FAA, that it was the FAA that designed this helicopter without a crash-resistant fuel tank. And we know, and there's no dispute, the FAA is not in the business of designing helicopters, Your Honors. Their mission is to regulate safety of aircraft. And they do that by promulgating regulations, testing requirements, which it is up to the helicopter manufacturer to design and to meet these minimum standards. But the design choices are solely the manufacturer. That goes to your point, Judge Schroeder. And secondly, and this is critical, they show compliance by means of what we've called these FAA designees. These are the in-house folks who gather the data, the testing data, and they submit that to the FAA to demonstrate their compliance. Now, all of that is done with the supervision and the oversight of the FAA. So how does Airbus get to acting under? You heard them admit they're not claiming to be a government contractor, so that's off the table. We are then limited, they're very limited then to what they can say that gets them to acting under. And they've said, and this goes to your point, Judge Rawlinson, they have said both in their opening brief and in their reply brief and here today that the plaintiffs, they misrepresent, they represent to this court that the plaintiffs claim in their complaint that defendant improperly certified the helicopter. You heard him say that that was threw out. That's not true. Respectfully, that is a misrepresentation of this record. The only time the word certify or certifies appears in our 110-page complaint is one time, and that is in the introduction regarding general allegations and solely as an identifier. Aren't we supposed to look at whether the delegation has occurred with respect to the power to issue a supplemental type certificate? And that would include, would it not, design issues? The power to issue a supplemental type certificate, Judge O'Scanlan, is simply the power that it gives to the change in design, that's what an STC is, meets the requirements. But that's the delegation that's the first step in this analysis, is it not? That is the delegation, but it is a formal delegation of the ability to show compliance. And however formal it is, they're really hung up here on the degree of formality of the delegation. But the formality of the delegation is not what's controlling, it's what's being delegated. And Judge O'Scanlan, the only thing that's being delegated with an STC and the ability to do that is to self-certify according to the regs and the testing that this change design is in compliance with the regs. That's all it is, Judge O'Scanlan. And getting back to the point. Well, how would, how do you understand the preemption argument to fit here? I think your point that you made with counsel, that's a totally different argument that doesn't implicate the acting under requirement. Whether or not that's a colorable federal defense, we would save for another day. But my point to you would be if that's true, if they were preempted from making a safe helicopter fuel tank, then why are all of the other helicopters in that class have the safe fuel tank? So it's simply not true. And getting back to this point about. Well, what is the preemption argument? I should probably ask your adversary. But would that mean in your view that the design itself was dictated by the federal regulation? That's their suggestion, and that's absolutely wrong. No one tells Airbus how to design a fuel tank or a helicopter or a main rotor blade, Judge Schroeder. They merely give them the, and the actual, there are stress tests, there are strength tests. They don't tell them how to design. They just tell them. Isn't that the reason for the whole program, though? Absolutely. That's exactly right, Judge O'Scanlan. They want to have certain minimum standards. Yeah, but we're talking about delegation here. Right. And it doesn't make sense. Your argument doesn't seem to make sense if the issue is delegation. The delegation is of a legal or regulatory authority. Right. And, Your Honor, the specific regulation applicable here, which is the Order 8110.15, which everybody cites, and it is at page 130 of the addendum, says that the ODA holder may not perform regulatory activity. And Airbus Helicopters concedes in their brief at page 7 that FAA, to your point, Your Honor, retains the ultimate authority of determining compliance. Compliance does not equal acting under. The Watson case, which was the unanimous Supreme Court decision, is dispositive here because in that case the court was very clear that a product manufacturer in a heavily regulated industry, no matter how highly detailed or complex, they do not act under that federal agency. And the court arrived there, Your Honors, by looking at the acting under language and deciding that this was not the kind of assistance, simply complying with federal regulations, that rose to the level of acting under to trigger the federal officer removal statute. And I think it's very important to your point, Judge O'Scanlan, that this defendant admits this point of law. At page 24 of its brief, quote, AHI recognizes that such compliance alone would not allow removal under Watson. And so where we get to this legal authority idea is this, and this underlies the real flaw in their argument. They cherry pick that phrase, as he did today, formal delegation of authority, and confuses that with the delegation of legal authority. But there's no delegation of legal or regulatory authority. It's only the authority to comply. And that's what's so critical. And that is also admitted by the defendant on page, this is on page 7, FAA retains the ultimate authority of determining compliance. And that is, to your point, Judge O'Scanlan, we can talk about the memorandum of understanding and all of these regulations, and he gets up and says, well, I've never seen so much regulation. It's almost like a tipping point argument that there's so much regulation we have to be considered to be acting under. It doesn't work that way. A lot of regulation is still just regulation. Well, I still am having a little trouble conceptually. There are a lot of government regulations concerning standards for safety of cribs, baby cribs. And the manufacturers have to comply with those. But there's no authority delegated in the same sense here, is there, in that kind of situation? Well, I don't know the baby crib cases as much as I do the aircraft cases, Judge Schroeder. I guess I'm more familiar with baby cribs.  But in our situation, there's no showing, as was compelling in Watson, that there's any delegation of legal authority, ultimate regulatory authority, and that's what's missing here. And I want to talk about the Fidelidad case. This Court ---- So you would say that this is just similar to having to comply with regulation? Precisely, Judge Schroeder. And a lot of regulation compliance is just still compliance. So what's encompassed, then, with respect to the supplemental type certificate? The supplemental type certificate, Judge O'Scanlan, is, as you and I talked about before, only authority to the type certificate holder to make a revision or change subject to showing compliance that the change meets the regs. That's it. I'll put you up to the first part, but I'm not convinced on the second part, subject to showing compliance. It seems to me that there's a delegation. Is there not? No. There is a delegation to show compliance. In other words, that is actually what this Court ---- And I started to talk about Fidelidad, and it goes to your precise point, Judge O'Scanlan, because this Court ---- And this was the subject of our 28-J letter. In Fidelidad, this Court cited with approval the Seventh Circuit decision in Lujan Hong, which they say they disagree with. This was a unanimous en banc decision by Judge Easterbrook, and the decision there was absolutely along the same lines. Boeing was in the same position as Airbus here today, and the Court said that the delegation to self-certify to an aircraft manufacturer did not meet the acting under standard. And this is very important because in this case, the Ninth Circuit not only cited to, but quoted that precise holding with approval. And that's critically important. And no court since that Seventh Circuit decision has expressed any disagreement with the analysis or conclusion of Lujan Hong that all of this is simply regulation. It's a lot of regulation, but it's regulation. And finally, to his point about there being some kind of a risk of State court prejudice, that's not shown here that there's any risk of any State court prejudice by allowing this State court lawsuit to proceed under State law. All right. Counsel, thank you. Thank you, Your Honors. Good afternoon, Your Honors, and may it please the Court. My name is Patrick Kearns. My firm represents the operator defendants in this case, the appellees who operated the helicopter and their employees. Now, I took five minutes today of our side of the argument to talk about the second two elements of the three. As you'll see now and as we've already learned from the argument so far, there's a lot of overlap. There's a lot of overlap between these three elements, at least in the discussion sense. We've already talked about the defense. We've already talked about acting under. But perhaps I can help clarify some things from what I've heard. What we have here is a situation where AHI is trying to tell this court that the sheer size or the sheer volume of the regulations at issue somehow make this delegated authority something more than it is. And this bears on the first part that I want to talk about, which is an element that they have to demonstrate, which is causation. Now, these ODA status designations, they're very common in the aviation world, and they allow AHI the ability to self-certify that they've met these regulations. Now, if there was, and there may very well be, Judge Schroeder, a department, and I wouldn't be aware of it, that supervises or regulates the creation of baby cribs, for example. And if that was the case, the manufacturer of a baby crib in such a situation as AHI would have been delegated the authority to look at their baby crib and say, well, Department of Baby Cribs, we know what your regulations are, we've read them, we're experienced in them, and here we certify. That's all this designation does. So I think it's important. But that's why I asked the question as to whether or not any other helicopters were certified under this authority. Exactly. And I thought the answer was that they could certify other helicopters. That is incorrect, and I don't believe that that was the answer. They have the ability to self-certify their own helicopters. He mentioned the foreign corporation and what I assume counsel's referring to as their parent company, Airbus. Well, I'm confused by that question. Well, I thought Judge O'Scanlan said there are other Airbuses that you could certify, and I thought his answer was yes to that. I'm sorry. Yes, to that question, yes. I was referring to your question. Thank you for clearing that up. They're Airbuses. They're Airbuses. They're Airbuses. They didn't necessarily have to be his. Their own helicopters. Their own helicopters. Yes. But if there were other companies that owned similar helicopters, could they certify those? No. The FAA does not delegate to Airbus the ability to certify a different company's helicopter. But it does delegate to Airbus the authority to issue supplemental certificates with respect to its own helicopters. Correct. And Airbus has the last word. It doesn't go back. It's not going to be reviewed by the FAA. The certification, the certificate that is issuable is the final word, is it not? Actually, I don't think that's correct, Your Honor, and I don't believe that Airbus will tell you that's correct. And let me tell you why. That brings me to – I'm going to skip over a point quickly, but it brings me to their preemption argument. In this very case, if you look at their briefing, and they'll tell you, they'll have to tell you when they stand up here, in order to argue to this court that they are acting under a federal officer, they claim just that. They claim that they have been deputized by the FAA, that they have the FAA's authority to do what they want and then certify it. But then when it comes to demonstrating a necessary colorable defense, a requisite element to federal jurisdiction here, they tell you right in their briefs they don't have that ability. They say the only way we can make a change to this helicopter is if the FAA comes in and issues final certification, because otherwise there would be no preemption. There would be no conflict, right? If AHI had the unfettered ability to self-certify without the FAA's approval or involvement, then they don't have a preemption argument. They have argued the exact opposite defense from both ends, and they can't have it both ways. One of the final things I'll say in my last 30 seconds, Your Honor, with respect to at least the causation element, and I think this is significant, and this is sort of raised in the, what we're calling the Boeing case or the Liu Jianhong case. It's important to recognize the, when it comes to the causation element of this, of this particular issue, we have to look at what it is that the plaintiffs are claiming, and that's gotten a little bit lost in this argument. They're claiming state law design defect claims, negligence claims. They designed a defective, a dangerous helicopter. There is no allegation here that the FAA was negligent. There is no allegation that the FAA's delegatees were negligent in performing those duties. And there was one case, and I'd like to mention this briefly. It's the, it's cited in both the appellate's briefs, the Estate of Heckler case. That court made a comment, and I thought it would be instructive here. That court was addressing a lawsuit against an aircraft engine manufacturer, Lycoming. And that court made, it was sort of a dicta comment, but it said, the court noted that the manufacturer in that case was not being sued, like in this one, because of their ODA status, or because they failed to do something in relation to their ODA status. And they said, the claims would be equally viable without it. And I think this Court should ask that question in this case. If we remove the ODA status, hypothetically, for the sake of this argument, if we remove that status from this case, the plaintiffs' claims are identical. All right, counsel. You've exceeded your time. Thank you. Thank you very much. Thank you very much, Your Honors. I realize I'm the only thing between you and lunch, so I will try to be brief at this point. Let me start off by being very clear in terms of precisely what the allegation of the complaint is that gives rise to our concern here, right? It comes on page 38 of our brief where we cite it, but it's paragraph 486 of their complaint, where they talk about the breach of the duty of care by its failure to test, manufacture, sell, monitor, field perform, accumulate field data, recall, and distribute safe helicopters and component parts. That strikes me as the entirety of what is at issue when you're talking about the certification process. Now, I talked about the statutory delegation and the regulatory delegation. But if you just look at the memorandum of understanding, what does it say specifically? It says that an administrator may delegate to a qualified private person a matter related to the examination, testing, and inspection necessary to the issuance of a certificate under this chapter and issuing the certificate. Now, is it true that the FAA has the authority to rescind actions taken? Yes, it does. But the bottom line is, is that the basic certification authority in the first instance is delegated, and they are, in fact the ---- delegation of the certification authority means that something is going to be litigated here other than in a garden variety design defect case. Because at the end of the day, the real question is whether or not the federal interest in how the safety of these products is protected through a regulatory scheme that employs private persons will, in fact, be interfered with by litigating it as a matter of ---- with a hostile State court. But the regulatory scheme doesn't tell them how to design the helicopter. It gives the ---- it tells them what standards they have to meet. Right. But it also ---- but it does tell them under certain circumstances whether to approve or not approve. And ultimately the issue here is one of a failure of omission rather than commission, which is that they said there should have been some kind of a supplemental type certificate offered up under these circumstances. And in that context, given that, that clearly implicates an area that's delegated authority with a very low bar on the question of whether or not there is causation. Goncalves says that specifically and clearly. And finally, with merely having to demonstrate colorable preemption, it seems to me, Your Honor, the decision below should be reversed and this case should be litigated in federal court. And are you asking us to create a split with the Seventh Circuit? I would try to argue that the court ---- the Supreme Court doesn't have to resolve that split, and the invention did go down there. But, no, I don't see any way to distinguish the way Judge Easterbrook approached this. On the other hand, I think there's an existing split between the Eleventh Circuit and the Seventh Circuit. Between what circuit and the Seventh? The Eleventh and the Seventh. Oh, Eleventh. It's already there. It's already there. All right. Thank you, counsel. Thank you, Your Honor. Thank you to all counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court. That completes our calendar for the morning. We are on recess until 9 a.m. tomorrow morning. Thank you.
judges: Schroeder, O'scannlain, Rawlinson